UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY ROSS,

                Plaintiff,           CIVIL ACTION NO. 08-10715

      vs.

                              DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:**     This Court recommends that Defendant's Motion for Summary Judgment (docket no. 15) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED, and that Plaintiff's Complaint be DISMISSED, as the ALJ's decision is supported by substantial evidence.

                                   \*\*\*

**II.**     **PROCEDURAL HISTORY:**

        Plaintiff filed applications for Disability Insurance benefits, a period of Disability and Supplemental Security Income on July 28, 2004 alleging that he had been disabled and unable to work since July 11, 2004 due to status post gunshot wound in the left abdomen. (TR 50-52, 57, 60, 332-34). Plaintiff later alleged mental impairments. The Social Security Administration denied benefits. (TR 37-41). A requested de novo hearing was held on May 8, 2007 before Administrative Law Judge (ALJ) John L. Christensen who subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or eligible for Supplemental Security

Income because he was not under a disability at any time from July 11, 2004 through the date of the

ALJ's June 26, 2007 decision.  (TR 14, 21, 341).  The Appeals Council declined to review the ALJ's

decision and Plaintiff commenced the instant action for judicial review.  (TR 2-4).  The parties filed

Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits

was supported by substantial evidence on the record.

### III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.   Plaintiff's Testimony

Plaintiff was 40 years old at the time of the hearing.  (TR 349).  Plaintiff has a high school

education and some college education.  (TR 349).  Plaintiff has past work experience as a janitor at

a fast food restaurant.  (TR 349-50).  He testified that he lost that job because he became too slow,

which he attributes to being in pain.  (TR 350).  Plaintiff also has past work experience as a city

employee doing construction.  (TR 350-51).  The work was seasonal and Plaintiff was laid off each

winter.  (TR 351).  Plaintiff lives with his father and stepmother and has two children under the age

of eighteen who do not live with him.  (TR 346-47).  Plaintiff has a driver's license and is able to

drive but he does not drive all of the time because he sometimes feels nauseated and confused.  (TR

348).

Plaintiff testified that he does not shop or do housework.  Plaintiff testified that he is bloated

at the site of his colostomy and he is in pain.  (TR 353-54).  Plaintiff testified that he also has bad

headaches, which he attributes to a nodule on his head.  (TR 353-54).  He takes pain medication if

the doctor prescribes it for him.  Plaintiff testified that over the counter pain medication is somewhat

effective but Tylenol 3 or Vicodin is the most effective.  (TR 355).  Plaintiff testified that he could

not go back to his construction or janitorial jobs.  Plaintiff also testified that he could not do a job

2

with a sit and stand option because he is in too much pain, he has a colostomy bag, his entire left side hurts and he has had three infections. (TR 353). The ALJ confirmed with Plaintiff that his colostomy was reversed in 2005 and Plaintiff agreed. (TR 352).

Plaintiff testified that he sometimes has trouble remembering what someone tells him because he has so much on his mind and is stressed out. (TR 357). Plaintiff testified that sometimes he hears voices and has hallucinations. (TR 355). Plaintiff did not otherwise describe the voices or hallucinations. (TR 356). Plaintiff has trouble sleeping at night because he cannot lie on his right side; there is still a bullet in his right hip. (TR 356). He also testified to having a bullet in his left pelvis. (TR 356). Plaintiff stated that he falls asleep and naps during the day. (TR 357-58). Plaintiff can stand or walk for fifteen to twenty minutes before he needs to sit and using stairs causes pain in his side. (TR 357). He stated that he can lift twenty to forty pounds but then has to "wait a long time" before he can lift anything again. (TR 357). Plaintiff agreed that the pain on his left side effects his ability to push, pull and bend at the waist. (TR 357).

### B.     Medical Evidence

The Plaintiff's sole challenge on appeal is to the ALJ's findings relating to his mental impairment. (Docket no. 10). The Court has reviewed the entire record. *See Heston v. Comm'r of Social Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Judicial review of the Secretary's findings must be based on the record as a whole."). In July 2003 Plaintiff was treated for a left shoulder acromioclavicular joint separation. (TR 90-98). On July 11, 2004 Plaintiff reported to the emergency room with multiple gun shot wounds to the left lower quadrant and left buttock. (TR 99). Dong W. Ohm, M.D., performed an exploratory laparotomy and repaired a perforation of the distal sigmoid and right-sided perforation to the distal ileum, performed an exploration of the left side of the retroperitoneum, debridement and excision of the gunshot injury in the left abdominal wall and

3

a diverting colostomy. (TR 99-100, 104, 107). At a follow-up appointment on August 12, 2004 it was noted that Plaintiff had abdominal pain but his incision was healing appropriately. (TR 113). Plaintiff reported that he was smoking more cigarettes due to stress. (TR 113).

Leonard Balunas, Ph.D., psychologist, completed a Psychiatric Review Technique form on September 18, 2004 and concluded that Plaintiff has no medically determinable impairment but had a coexisting nonmental impairment that requires referral to another medical specialty. (TR 126-38, 140). Dr. Balunas also noted that the record does not indicate any limitations due to mental impairments. (TR 138).

On September 28, 2004 Samiullah H. Sayyid, M.D., examined Plaintiff for a state agency disability evaluation. (TR 142-44). Dr. Sayyid reported that Plaintiff's stance, posture and ambulation were normal. (TR 143). Plaintiff was "able to walk on heels and toes, squat and recover, and get on and off the table without any difficulty." (TR 143). Plaintiff was alert and oriented and "[s]peech, memory and cognitive functions" were normal. (TR 143).

Plaintiff underwent a colostomy reversal on January 13, 2005. (TR 156-58, 199, 286). He was discharged on January 21, 2005 with instructions not to lift or perform strenuous activity for eight weeks. (TR 155, 286). Plaintiff was prescribed Vicodin, Colace and Pepsid. (TR 171). During a follow-up appointment on February 11, 2005 Dr. Ohm noted that Plaintiff's estimated and tentative return to work date was March 7, 2005. (TR 288). In March 2005 Dr. Ohm noted that Plaintiff's wound was healing very well and the incisional pain was improving. (TR 281).

Following complaints of abdominal pain in September 2005 Plaintiff underwent x-rays of his abdomen which showed no specific abnormalities. (TR 326-29). In October 2005 Plaintiff complained of abdominal pain after lifting a lot at work. (TR 324-35). Plaintiff was advised to stop lifting with his back and to bend his knees when lifting instead. (TR 325). Plaintiff was also

4

advised to wear a brace or belt while lifting heavy objects. (TR 325). In November and December 2005 Plaintiff presented to Hamilton Community Health Network (HCHN) with complaints of a cyst on the back of his head. (TR 320-23). The reports note that Plaintiff was working at McDonalds at the time and the notes from November 2005 indicate that Plaintiff had "low hours" at work. (TR 322).

On February 2, 2006 Plaintiff complained of abdominal pain and a knot on the back of his head. (TR 318). The knot was noted as a benign cyst and the abdominal pain was non specific. (TR 319). On February 20, 2006 Plaintiff presented to HCHN with complaints of a headache in his right temple area. (TR 313). Plaintiff reported that the headaches had started two months prior and that the current headache had a duration of five hours. Plaintiff was diagnosed with a tension headache and prescribed Voltaren. (TR 314). November 20, 2006 examination notes from HCHN state that Plaintiff "has a physique such that it appears that he works out physically." (TR 307). In February 2007 Plaintiff reported to HCHN with difficulty and pain with urination and bowel movements. (TR 304). Plaintiff was prescribed Doxycycline and Ultram and encouraged to take in adequate water for hydration and use over the counter Colace as needed. (TR 305).

On February 13, 2007 Matthew P. Dickson, Ph.D., Licensed Psychologist, performed a psychiatric/psychological medical evaluation of Plaintiff. (TR 293-299). Dr. Dickson reported that Plaintiff's score on the Dot Counting Test was suggestive of under-representation of abilities. (TR 293). Dr. Dickson noted that Plaintiff reported not having been "thinking straight" recently and that Plaintiff woke up "the other night" with knives in his hands. (TR 293). Plaintiff reported having stress from living with his parents and that he was thinking about suicide a lot recently. (TR 293). Plaintiff reported that he sometimes wants to hurt himself or others, but denied any current suicidal

5

or homicidal intent or plan.  (TR 293, 295).  Plaintiff reported being upset with the government because he has not received any assistance.  (TR 293).

Dr. Dickson noted that Plaintiff was taking no medication at the time, yet Plaintiff reported having been in mental health treatment and did not know where, and that he had received psychiatric medication but he did not know what it was.  (TR 293).  Plaintiff reported that he had a drug problem "once" in his life and had tried cocaine and marijuana.  (TR 293).  Dr. Dickson reported that Plaintiff appeared hostile and angry during the exam and had many "rants" during the exam about not having received government assistance.  (TR 294, 296).  Dr. Dickson reported that Plaintiff seemed to be in contact with reality throughout the exam, seemed to exaggerate his symptoms and his speech was unimpaired.  (TR 294).  Dr. Dickson noted that Plaintiff's stream of mental activity was spontaneous and organized and that he "talked excessively today in an attempt to convince me of the severity of his condition." (TR 294).  Plaintiff reported hearing voices "all the time," yet Dr. Dickson noted that Plaintiff was "evasive in answering questions about the alleged hallucinations" and Dr. Dickson found that his report was not credible.  (TR 295).  Dr. Dickson noted that Plaintiff reported requiring assistance in scheduling and keeping appointment but Dr. Dickson noted that Plaintiff "seemed easily capable of doing this" and was also able to find locations independently.  (TR 294).

Dr. Dickson diagnosed Plaintiff with unspecified Adjustment Disorder (309.9), a history of cocaine abuse and a GAF of 65.  (TR 296).  On the Medical Source Statement Of Ability To Do Work-Related Activities (Mental) dated February 14, 2007, Dr. Dickson concluded that Plaintiff's ability to understand, remember and carry out instruction was not affected by the impairment.  (TR 297-99).  He concluded that Plaintiff's "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting" was affected by the impairment and Plaintiff has "slight"

6

restrictions (out of none, slight, moderate, marked and extreme) in his abilities to interact appropriately with the public, supervisors and co-workers, and abilities to respond appropriately to work pressure in a usual work setting and changes in a routing work setting. (TR 298). Dr. Dickson noted that no other capabilities were affected by the impairment. (TR 298).

### C. Vocational Expert Testimony

The Vocational Expert (VE) agreed with the ALJ's classification of Plaintiff as a younger individual with a high school education. (TR 360). The ALJ asked the VE to consider an individual with Plaintiff's age, education and work experience with the ability to perform light exertional work with no climbing of ropes, scaffolds, and ladders, limited to only occasional non-repetitive bending, twisting, crouching and crawling, and limited to simple, routine tasks in a low stress environment consisting of minimal changes in the work place setting and no more than occasional contact with the general public. (TR 361). The VE testified that such an individual would be able to perform jobs in the light unskilled category which would include assembler (approximately 35,000 jobs in the lower peninsula of Michigan), machine operator (approximately 22,000 jobs) and packer (approximately 6,100). (TR 361). The VE testified that these jobs conform to the Dictionary of Occupational Titles. (TR 361).

The ALJ also asked the VE to consider the same hypothetical individual but with the additional limitation that as a result of pain, depression and fatigue secondary to pain and pain medication, the individual cannot sustain sufficient concentration, persistence or pace to do simple, routine tasks on a regular and continuing basis, which means eight hours a day and five days a week, for forty hours per week. (TR 362). The VE testified that work would be precluded for such an individual. (TR 362). The VE testified that generally one unpredictable absence per month is the maximum allowed for maintaining competitive employment. (TR 362).

7

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the disability insured status requirements through December 31, 2009, had not engaged in substantial gainful activity since July 11, 2004, suffered from status post gunshot wound to the left abdomen and an adjustment disorder, both severe impairments, but he does not have an impairment or combination of impairments equal to the Listing of Impairments. (TR 16). The ALJ found that Plaintiff is unable to perform his past relevant work but concluded that Plaintiff has the residual functional capacity to perform a limited range of light work with no climbing of ropes, ladders or scaffolds, only occasional non-repetitive bending, crouching, twisting or crawling and consisting of simple routine tasks in a low stress environment with minimal changes in workplace setting and no more than occasional contact with the general public and Plaintiff is capable of performing a significant number of jobs in the economy. (TR 17). Therefore, he was not suffering from a disability under the Social Security Act at any time from July 11, 2004 through the date of the ALJ's June 26, 2007 decision. (TR 21).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases de novo,

8

resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework For Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The

Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

Plaintiff's sole argument on appeal is that the ALJ failed to evaluate Plaintiff's mental impairments in accordance with the technique set forth in 20 C.F.R. §§ 404.1520a and 416.920a. (Docket no. 10).  With respect to his mental impairments, Plaintiff argues that the ALJ did not include specific findings of the degree of limitation in each of the functional areas described in 20 C.F.R. §§ 404.1520a and 416.920a.

The Commissioner has prescribed rules for evaluating mental impairments.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.   The Commissioner first determines whether there is a medically determinable mental disorder specified in one of nine diagnostic categories.  *See id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.   Thereafter, the Commissioner measures the severity of a mental disorder in terms of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits.   The "B" criteria require an evaluation in four areas with a relative rating for each area.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The Commissioner must evaluate limitations in activities of daily living, social functioning and concentration, persistence, or pace and rate those on a five-point scale ranging between none, mild, moderate, marked, and extreme.  The fourth area is deterioration or decompensation in work or work-like settings and calls

10

for a rating of never, one or two, three, and four or more.  "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  The regulations also provide that a degree of limitation in the first three functional areas rated as "none" or "mild" and "none" in the fourth area will generally result in a conclusion that the claimant's "impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ did not make specific findings relative to each of the areas set forth in 20 C.F.R. §§ 404.1520a and 416.920a nor did he incorporate such findings into his written decision.  *See* 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).  In certain cases, courts have held that the failure to complete the Psychiatric Review Technique Form was harmless.  *See Cakora v. Barnhart*, 67 Fed. Appx. 983, 985 (8th Cir. 2003); *Robinson v. Barnhart*, 124 Fed. Appx. 405, 411 (6th Cir. 2005) ("The ALJ's failure to complete a Psychiatric Review Technique Form can constitute reversible error, . . . but in the Sixth Circuit, reversal is warranted only if the plaintiff shows 'significant evidence of a possible impairment that allegedly prevented the Plaintiff from working.'" *Id.* (citations omitted)); *Marcum v. Comm'r of Soc. Sec.*, 2000 U.S. App. LEXIS 787 at *13 (6th Cir. Jan. 18, 2000) ("Plaintiff relies upon several cases from other circuits in which the courts found the ALJ had failed to follow the proper procedures in evaluating a potential mental impairment.  We find those cases distinguishable because they involved significant evidence of a possible mental impairment that allegedly prevented the claimant from working.").

The ALJ extensively referenced the consultative examination performed by Dr. Dickson on February 13, 2007.  (TR 19).  Dr. Dickson's February 13, 2007 evaluation was the result Plaintiff's

counsel's request that the ALJ refer Plaintiff for a psychological evaluation[1].  (TR 336-39).  Dr. Dickson's report concluded that Plaintiff has a diagnosis of Adjustment Disorder, Unspecified (309.9).  The ALJ adopted this diagnosis as one of Plaintiff's impairments.  The ALJ also incorporated Plaintiff's statements, as noted in the Report, that he does not like to be around others and Dr. Dickson's conclusions that Plaintiff has "slight" restrictions on interacting appropriately with others by including a limitation in Plaintiff's RFC that Plaintiff have only occasional contact with the general public.  (TR 17, 19).

Despite the ALJ obtaining a  psychological evaluation, the record simply does not contain evidence of mental impairments or related limitations greater than those included in the ALJ's decision and RFC findings.  Other than notations during examinations wherein Plaintiff reported being under "stress," no treatment provider has reported any mental impairments or related limitations.  (TR 113).  Plaintiff generally stated that he had received some medication for a mental impairment, but he did not remember what it was and there is no objective evidence in the record that Plaintiff received any medication or other treatment for a mental impairment.  (TR 293).

In a September 2004 Psychiatric Review Technique form, Dr. Balunas concluded that Plaintiff has no medically determinable impairment but he has a coexisting nonmental impairment that requires referral to another medical specialty, and Dr. Balunas noted that the record does not indicate any limitations due to mental impairments.  (TR 126-38).  Dr. Sayyid performed a state agency disability evaluation and, although the evaluation focused on Plaintiff's physical impairments,  Dr. Sayyid reported that Plaintiff was alert and oriented and  "[s]peech, memory and

---

[1] The ALJ adjourned a November 21, 2006 hearing to accommodate Plaintiff's counsel's request.  (TR 336-39).  The ALJ adjourned the hearing until after Dr. Dickson's report was received and gave Plaintiff an opportunity to file objections to the report.

12

cognitive functions" were normal. (TR 143). The record does not contain evidence of mental impairments and related limitations greater than those found by the ALJ. Plaintiff points out that the ALJ did not make the necessary findings under 20 C.F.R. §§ 404.1520a and 416.920a, however, Plaintiff does not identify any specific limitations which the ALJ should have considered. The Court finds that the ALJ's failure to make findings with respect to the areas identified in 20 C.F.R. §§ 404.1520a and 416.920a was harmless error and his decision is supported by substantial evidence.

With respect to the RFC, the ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were not wholly credible[2]. The ALJ properly incorporated those limitations he found credible in his hypothetical question to the VE and those limitations are consistent with the RFC[3]. Therefore the ALJ properly relied on the VE's testimony and found that there are significant numbers of jobs in the economy which Plaintiff can perform. The ALJ's findings are supported by substantial evidence as set forth herein.

---

[2] Plaintiff has not challenged on appeal the ALJ's findings regarding his credibility, therefore that issue is not before the Court. The Court notes, however, that the ALJ's credibility determination is supported by substantial evidence and the ALJ specifically discussed objective medical evidence in the record, Plaintiff's use of pain medication, Plaintiff's own testimony and Plaintiff's activities in making the credibility determination. (TR 18-20). In view of the evidence, the ALJ could reasonably conclude that Plaintiff's subjective complaints of totally disabling symptoms were not entirely credible.

[3] In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1235 (6th Cir. 1993).
Although not raised on appeal it is worth noting that the ALJ's decision at step five was supported by substantial evidence. The ALJ properly referenced the regulations, Pt. 404, Subpt. P, App. 2, Rule 202.20 which would direct a conclusion of "not disabled" and further relied on the VE's testimony to determine what effect Plaintiff's non-exertional limitations would have on the number of jobs available in the economy.

**CONCLUSION**

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (docket no. 15) should be granted, that of Plaintiff (docket no. 10) denied and the instant complaint dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

14

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: April 10, 2009                s/ Mona K. Majzoub_____
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE




**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 10, 2009                s/ Lisa C. Bartlett_____
                                     Courtroom Deputy